**No. 24-7816**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

JACOB SMITH,

*Plaintiff-Appellee*,

v.

ISIDRO BACA, ET AL.

*Defendants-Appellants*.

On Appeal from the United States District Court
for the District of Nevada
No. 3:22-cv-00522-MMD-CSD
Hon. Miranda M. Du

---

**APPELLEE'S ANSWERING BRIEF**

---

**UCLA SCHOOL OF LAW
PRISONERS' RIGHTS CLINIC**
AARON LITTMAN *
385 Charles E. Young Drive E
Los Angeles, CA 90095
(310) 825-9562

Counsel for Plaintiff-Appellee
**Jacob Smith**

\* This brief was prepared with the substantial assistance of UCLA School of Law Prisoners' Rights Clinic students Daniel Green, Cameron Gunn, Nickolas McLean, and Anna Okada.

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................. v

INTRODUCTION ........................................................................................... 1

JURISDICTIONAL STATEMENT ....................................................................... 3

ISSUES PRESENTED ..................................................................................... 4

STATEMENT OF THE CASE .............................................................................. 5

    I.     COVID in Nevada Prisons ................................................................. 5

    II.    As a COVID Outbreak Consumed WSCC in November 2020, Appellants Moved Infected Prisoners into Mr. Smith's Housing Unit. 6

    III.   Procedural History .......................................................................... 8

SUMMARY OF THE ARGUMENT ..................................................................... 12

STANDARD OF REVIEW ................................................................................ 14

ARGUMENT ............................................................................................... 15

    I.     This Court Lacks Jurisdiction Over This Interlocutory Appeal ......... 15

        A.    This Court Lacks Interlocutory Jurisdiction Over Questions of Admissibility. ...................................................................... 16

        B.    This Court Should Join the Majority of Circuits Which Have Addressed the Question Directly and Hold That Interlocutory Review of Qualified Immunity Denials Does Not Extend to Questions of Admissibility. ................................................... 23

        C.    Personal-Knowledge Admissibility Challenges Raise Questions of Evidentiary Sufficiency and Credibility and Present an Especially Strong Case Against Interlocutory Jurisdiction. .... 25

D. This Court Lacks Jurisdiction to Hear This Appeal Because Appellants Seek Only to Relitigate the Facts Mr. Smith Will be Able to Prove at Trial. ............................................................ 28

II. Even If This Court Had Jurisdiction to Review It, Appellants' Argument That the Statements in Mr. Smith's Verified Pro Se Complaint and Grievance Are Not Based on Personal Knowledge Does Not Warrant Reversal. ........................................................................ 30

A. The Issue Is Not Preserved Because Appellants Failed to Adequately Notify the District Court of a Personal Knowledge Objection. ............................................................. 32

B. Even If the Issue Had Been Preserved, a Reasonable Factfinder Could Infer That the Statements Are Based on Personal Knowledge. .............................................................. 35

III. Appellants Violated a Clearly Established Right When They Moved Several Prisoners to Mr. Smith's Unit Despite Awareness of a COVID Outbreak in Their Prison. ................................................................. 40

A. The Right to Be Protected from Exposure to a Serious Disease, Like COVID, Has Been Clearly Established for at Least Thirty Years. ............................................................... 41

B. A Triable Issue Exists as to Whether Appellants Acted with Deliberate Indifference in Risking Mr. Smith's Exposure to COVID ............................................................... 45

IV. Even If Mr. Smith Did Not Provide Sufficient Evidence to Oppose Summary Judgment, the Court Should Remand with Instructions to Reopen Discovery Under Rule 56(d) Rather Than Reverse and Grant Summary Judgment. ........................................................................ 48

A. This Court Has the Authority to Construe Mr. Smith's Response to Appellants' Motion for Summary Judgment as an Implicit Rule 56(d) Request. ............................................... 50

B. Mr. Smith's Rule 56(d) Request Was Meritorious Even in the Absence of a Formal Showing. ................................................ 51

C.     Mr. Smith Acted Diligently in Conducting Discovery............ 54

D.     Applying Rule 56(d), This Court Should Remand with Instructions to Reopen Discovery If It Finds Mr. Smith Provided Insufficient Evidence. ................................................................. 56

CONCLUSION ...................................................................................... 57

STATEMENT OF RELATED CASES................................................... 58

CERTIFICATE OF COMPLIANCE .................................................... 59

CERTIFICATE OF SERVICE.............................................................. 60

iv

# TABLE OF AUTHORITIES

**Cases**

*Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536 (9th Cir. 1991).... 32, 34

*Allen v. Sakai*, 48 F.3d 1082 (9th Cir. 1994) ....................................................... 18

*Aperia Sols., Inc. v. Evance, Inc.*, No. 3:18-cv-03276, 2020 WL 6946514 (N.D. Tex. Nov. 25, 2020) ................................................................................................. 56

*Ballou v. McElvain*, 29 F.4th 413 (9th Cir. 2022) .......................................... 15, 40

*Bank of Am., NA v. Santa Barbara Homeowners Ass'n*, No. 19-16922, 2022 WL 17076048 (9th Cir. Nov. 18, 2022) ............................................................... 52

*Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999 (9th Cir. 1990) ..................... 36

*Behrens v. Pelletier*, 516 U.S. 299 (1996) ............................................................ 16

*Black v. J.I. Case Co., Inc.*, 22 F.3d 568 (5th Cir. 1994) ..................................... 56

*Bridges v. Morgan*, No. 21-12425, 2022 WL 342905 (11th Cir. Feb. 4, 2022) ..... 24

*Calloway v. Veal*, 571 F. App'x 626 (9th Cir. 2014) ................................ 51, 53, 54

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) ....................................... 26

*Cortez v. Stubbs*, No. 24-2714, 2025 WL 1588735 (9th Cir. June 5, 2025) ......... 22

*Cunningham v. Gates*, 229 F.3d 1271 (9th Cir. 2000) .......................................... 20

*Ellis v. Salt Lake City Corp.*, 147 F.4th 1206 (10th Cir. 2025) .................. 16, 23, 24

*Ellis v. Washington Cnty., Tenn.*, 198 F.3d 225 (6th Cir. 1999) ...................... 23, 24

*Eng v. Cooley*, 552 F.3d 1062 (9th Cir. 2009) ..................................................... 20

*Estate of Allen v. City of W. Memphis*, 509 F. App'x 388 (6th Cir. 2012)............. 19

*Estate of Anderson v. Marsh*, 985 F.3d 726 (9th Cir. 2021) ........................ 3, 15, 17

*Evans v. City of Los Angeles*, 446 F. App'x 4 (9th Cir. 2011) .............................. 21

*Farmer v. Brennan*, 511 U.S. 825 (1994) ................................................. 41, 44, 45

*Farmer v. Moritsugu*, 163 F.3d 610 (D.C. Cir. 1998) .................................... 22, 28

*Foster v. City of Indio*, 908 F.3d 1204 (9th Cir. 2018)...........................................14

*Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613 (9th Cir. 2021) ..............48

*Fraser v. Goodale*, 342 F.3d 1032 (9th Cir. 2003).................................................34

*Garrett v. City & Cnty. of San Francisco*, 818 F.2d 1515 (9th Cir. 1987)............49

*Gates v. Sergent*, No. 2:22-cv-1576, 2024 WL 5294941 (E.D. Cal. Nov. 21, 2024)
.................................................................................................................................55

*George v. Morris*, 736 F.3d 829 (9th Cir. 2013) ........................................15, 18, 19

*Glaze v. Byrd*, 721 F.3d 528 (8th Cir. 2013) ...................................................25, 27

*Hampton v. California,* 83 F.4th 754 (9th Cir. 2023)..........................42, 43, 44, 45

*Hardesty v. Cochran*, 621 F. App'x 771 (5th Cir. 2015) .......................................25

*Hart v. City of Redwood City*, 99 F.4th 543 (9th Cir. 2024) ...........................20, 21

*Helling v. McKinney,* 509 U.S. 25 (1993) ....................................................41, 43, 44

*Hernández v. Mesa*, 582 U.S. 548 (2017) .............................................................22

*Hinojosa v. Johnson*, 277 F. App'x 370 (5th Cir. 2008).......................................36

*HSBC Bank, USA, N.A. v. Davis,* No. 12–cv–06801, 2014 WL 12775667 (N.D. Ill.
July 7, 2014)........................................................................................................52

*Hudson v. Palmer*, 468 U.S. 518 (1984) ..............................................................41

*Hutto v. Finney*, 437 U.S. 678 (1978) ...................................................................41

*Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938 (9th Cir. 2017) ..................18

*Jacobson v. U.S. Dep't of Homeland Sec.,* 882 F.3d 878 (9th Cir. 2018)..............51

*Jeffers v. Gomez*, 267 F.3d 895 (9th Cir. 2001) .......................................20, 22, 28

*Jerden v. Amstutz*, 430 F.3d 1231 (9th Cir. 2005)................................................34

*Johnson v. Jones*, 515 U.S. 304 (1995) ................................................................16

*Jones v. Blanas*, 393 F.3d 918 (9th Cir. 2004).............................................passim

*Jones v. Clark*, 630 F.3d 677 (7th Cir. 2011).......................................................24

vi

*Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988)............................................. 51

*Knox v. Southwest Airlines*, 124 F.3d 1103 (9th Cir. 1997).................................. 21

*Leer v. Murphy*, 844 F.2d 628 (9th Cir. 1988) ........................................................ 29

*Lewis v. Casey*, 518 U.S. 343 (1996) ..................................................................... 22

*Locke v. Haessig*, 788 F.3d 662 (7th Cir. 2015)...................................................... 24

*Lopez v. Praveen*, No. 21-cv-02380, 2024 WL 3968425 (E.D. Cal. Aug. 28, 2024) ........................................................................................................................ 42

*Lowry v. City of San Diego*, 858 F.3d 1248 (9th Cir. 2017) (en banc) .................. 15

*Lucien v. Gonzalez-Gamez*, No. 23-cv-03670, 2025 WL 2402673 (N.D. Cal. Aug. 19, 2025) ...................................................................................................... 55

*Maney v. Oregon,* 729 F. Supp. 3d 1087 (D. Or. 2024) ......................................... 47

*Maney v. Oregon*, No. 24-2715, 2025 WL 1794110 (9th Cir. June 30, 2025)....... 47

*McRae v. United States*, 812 F. App'x 505 (9th Cir. 2020) ................................... 55

*Mersch v. City of Dallas*, 207 F.3d 732 (5th Cir. 2000)................................... 25, 27

*Mitchell v. Forsyth*, 472 U.S. 511 (1985)............................................................... 17

*Montgomery v. Pinchak*, 294 F.3d 492 (3d Cir. 2002)........................................... 39

*Moran v Washington,* 147 F.3d 839 (9th Cir. 1998). ............................................. 14

*Mullenix v. Luna*, 577 U.S. 7 (2015) ...................................................................... 41

*Nidds v. Schindler Elevator Corp.*, 113 F.3d 912 (9th Cir. 1996)......................... 57

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014)................................................. 44, 45

*Peck v. Montoya*, 51 F.4th 877 (9th Cir. 2022) ............................................. passim

*Perma Rsch. & Dev. Co. v. Singer Co.*, 410 F.2d 572 (2d Cir. 1969)................... 33

*Pettibone v. Russell*, 59 F.4th 449 (9th Cir. 2023). ............................................... 22

*Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999 (9th Cir. 2002).............................. 32

*Plumhoff v. Rickard*, 572 U.S. 765 (2014). ........................................................... 19

*Sandoval v. County of San Diego*, 985 F.3d 657 (9th Cir. 2021)........................... 33

*Saucier v. Katz*, 533 U.S. 194 (2001) ...................................................................... 5

*Sawyer v. MacDonald*, 768 F. App'x 669 (9th Cir. 2019) ..................................... 53

*Scharf v. U.S. Att'y Gen.*, 597 F.2d 1240 (9th Cir. 1979) .................................... 36

*Scott v. Harris*, 550 U.S. 372 (2007)............................................................... 17, 19

*Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088 (9th Cir. 1990) .............................. 35

*Sneed v. Chase*, 266 F. App'x 545 (9th Cir. 2008) ............................................... 18

*Square El v. O'Leary*, No. 87 C 0495, 1988 WL 10630 (N.D. Ill. Feb. 5, 1988).. 52

*Stevens v. Corelogic, Inc.*, 899 F.3d 666 (9th Cir. 2018) ................................ 49, 52

*Sweet People Apparel, Inc. v. Phoenix Fibers, Inc.*, 748 F. App'x 123 (9th Cir. 2019) ...................................................................................................................... 34

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626 (9th Cir. 1987) ...................................................................................................................... 21

*Tatum v. Lucas*, No. 11-C-1131, 2020 WL 5015828 (E.D. Wis. 2020)................. 39

*Taylor v. Neal*, No. 3:25-cv-613, 2026 WL 395145 (N.D. Ind. Feb. 12, 2026)..... 36

*Thomas v. Gomez*, 143 F.3d 1246 (9th Cir. 1998) ................................................ 21

*Thomas v. Ponder*, 611 F.3d 1144 (9th Cir. 2010).................................... 36, 44, 50

*Tolan v. Cotton*, 572 U.S. 650 (2014) (per curiam) ................................................ 5

*Twentieth Century Fox Television v. Empire Distrib., Inc.*, 875 F.3d 1192 (9th Cir. 2017) ...................................................................................................................... 52

*United States v. Abel*, 469 U.S. 45 (1984)............................................................. 40

*United States v. Dibble*, 429 F.2d 598 (9th Cir. 1970).......................................... 35

*United States v. Lopez*, 762 F.3d 852 (9th Cir. 2014) ........................................... 35

*United States v. Owens-El*, 889 F.2d 913 (9th Cir. 1989)................................ 26, 35

*United States v. Sheppard*, 17 F.4th 449 (3d Cir. 2021) ....................................... 26

*United States v. Tomko*, 562 F.3d 558 (3d Cir. 2009) (en banc) ........................... 27

*United States. v. Shumway*, 199 F.3d 1093 (9th Cir. 1999) ................................. 40

*Voskanyan v. Upchurch*, No. 21-55333, 2022 WL 4181664 (9th Cir. Sept. 13, 2022) .................................................................................................................. 30

*Weldeyohannes v. Washington*, 162 F.4th 972 (9th Cir. 2025) ............................ 51

*Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012) ................................ 23, 24

*Wilkie v. Robbins*, 551 U.S. 537 (2007) ................................................................ 22

*Wilkins v. City of Oakland*, 350 F.3d 949 (9th Cir. 2003) .................................... 28

*Wood v. Moss*, 572 U.S. 744 (2014) ..................................................................... 22

**Statutes**

28 U.S.C. § 1331 ...................................................................................................... 3

**Other Authorities**

Appellants' Opening Brief, *Sneed v. Chase*, 266 F. App'x 545 (9th Cir. 2008) (No. 06-15833), 2006 WL 3623249 ................................................................. 18

James Stone, *The Prison Discovery Crisis*, 134 Yale L.J. 2751 (2025) ................. 56

Megan Wallace, et al., *COVID-19 in Correctional and Detention Facilities — United States, February–April 2020*, 69 Morbidity and Mortality Wkly. Rep. 587 (2020) ........................................................................................................ 6

Model Code of Evidence, Comment on Rule 104 (A.L.I. 1942) .......................... 26

**Rules**

Fed R. Civ. P. 56 advisory committee's note to 2010 amendment ....................... 34

Fed. R. Civ. P. 56(c)(4) ........................................................................................ 31

Fed. R. Civ. P. 56(d) ................................................................................... 14, 49, 56

Fed. R. Evid. 602 ............................................................................................. 35, 37

x

**Treatises**

10B Wright & Miller's Federal Practice and Procedure § 2738 (4th ed.).............. 33

15A Wright & Miller's Federal Practice and Procedure § 3914.10 (2d ed. 1992). 26

**Constitutional Provisions**

U.S. Const. amend. VIII ................................................................................... passim

## INTRODUCTION

A COVID outbreak was obviously brewing in Nevada's Warm Springs Correctional Center by early November 2020. Nearly 100 prisoners returned positive COVID tests. Unit 1 was placed on quarantine. Nonetheless, on November 5, Appellant prison officials transferred approximately twenty prisoners known to be infected with COVID from Unit 1 into Appellee Jacob Smith's housing unit. Predictably, Mr. Smith tested positive for COVID soon after the bed move. His symptoms were severe; chest pain and body aches rendered him immobile for several days. Mr. Smith knew prison officials had failed him: they had knowingly exposed him to a deadly virus. Incarcerated and without a lawyer, he sued to vindicate his Eighth Amendment right.

Appellants now challenge the district court's denial of qualified immunity at summary judgment. The scope of this Court's interlocutory jurisdiction is narrow, limited to the following question: when all triable disputes recognized by the district court are resolved in favor of the plaintiff, do the facts—that Appellants knowingly moved COVID-infected prisoners into Mr. Smith's unit—constitute a clearly established Eighth Amendment violation. The answer to this question is settled: in *Hampton v. California,* this Court recognized that there is a clearly established right to be protected from involuntary COVID exposure.

Because the only qualified immunity issue properly before this Court is so straightforward, Appellants seek to complicate things. They ask this Court to reach beyond jurisdictional limits to consider an admissibility issue which they never raised below. Yet the Supreme Court and this Court have made clear that on interlocutory appeal, this Court's jurisdiction is limited to abstract legal arguments addressing qualified immunity—not questions of admissibility. Because Appellants fail to raise any reviewable arguments, this Court should dismiss for lack of jurisdiction.

But even if this Court were to accept Appellants' invitation to transgress jurisdictional limits, it should affirm. Below, Appellants stonewalled Mr. Smith at discovery in violation of the district court's broad initial disclosure order. Now, Appellants attack the only evidence that their gamesmanship could not preclude Mr. Smith from putting before the district court: his personally perceived experiences, as set forth in his verified pro se complaint and grievance. But Appellants' unpreserved argument that Mr. Smith lacks personal knowledge is unavailing, because a factfinder could reasonably infer that Mr. Smith personally perceived the transfer of COVID-infected prisoners into his housing unit. Even if this Court were to find Mr. Smith's summary judgment evidence incompetent or insufficient, the proper course would not be to reverse, but instead to remand with instructions to reopen discovery under Rule 56(d).

2

When prison officials knowingly expose prisoners to a deadly, contagious virus by transferring infected prisoners into their unit, they violate their clearly established Eighth Amendment rights. This Court must reject Appellants' attempt to evade a trial at which they will be held to account for doing exactly that by raising unreviewable and unfounded attacks on the evidence offered by a pro se prisoner plaintiff.

## JURISDICTIONAL STATEMENT

Jurisdiction in the district court was proper pursuant to 28 U.S.C. § 1331. This Court has "limited" appellate jurisdiction on interlocutory appeal of denials of qualified immunity, "circumscribed" to only Appellants' "purely legal contention that [their] conduct did not violate the Constitution and, in any event, did not violate clearly established law.'" *Estate of Anderson v. Marsh*, 985 F.3d 726, 730-31 (9th Cir. 2021) (citation modified). For the reasons set forth below at pp. 15-30, this Court lacks jurisdiction over any other aspects of the district court's summary judgment decision; because this appeal challenges only the district court's finding of a genuine issue of material fact, this Court lacks jurisdiction entirely. *See Peck v. Montoya*, 51 F.4th 877, 885-87 (9th Cir. 2022).

3

## ISSUES PRESENTED

I.  This Court has repeatedly held that its interlocutory jurisdiction is limited to the core legal questions of qualified immunity: Whether, under plaintiffs' versions of the facts, defendants violated plaintiffs' federal rights and whether those rights were clearly established. Here, Appellants argue that the district court relied on inadmissible evidence to determine that a genuine issue of material facts existed and deny summary judgment. Does this Court have jurisdiction to consider that argument?

II.  Assuming the Court has jurisdiction to consider it, is Appellants' argument that Mr. Smith lacks personal knowledge of the events set forth in his verified pro se complaint and grievance preserved where Appellants never raised this argument below; and, even if the issue had been preserved, could a factfinder reasonably infer that Mr. Smith personally perceived the transfer of COVID-infected prisoners into his housing unit?

III.  Is it clearly established that prison officials who expose a plaintiff to a significant risk of COVID infection by moving infected prisoners to his housing unit, or by moving prisoners during an obvious, significant outbreak, violate his Eighth Amendment rights?

IV.  Even if the Court were to find that Mr. Smith did not provide sufficient competent evidence to defeat summary judgment, should summary judgment

4

be deferred to permit further discovery under Rule 56(d) because Appellants denied Mr. Smith essentially all discovery?

## STATEMENT OF THE CASE

The facts are presented here—as they were in the district court's decision denying summary judgment—in the light most favorable to Mr. Smith, with "all factual disputes" resolved and "all reasonable inferences" drawn in his favor, in accordance with the summary judgment standard. *Peck*, 51 F.4th at 885; *see also Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014) (per curiam) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)) (explaining that at summary judgment, qualified immunity inquiry analyzes "the facts, '[t]aken in the light most favorable to the party asserting the injury'").

## I.    COVID IN NEVADA PRISONS

As the COVID pandemic took hold across the country in 2020, Mr. Smith was incarcerated by the Nevada Department of Corrections ("NDOC") at the Warm Springs Correctional Center ("WSCC"). 2-ER-221. In Nevada, as elsewhere, COVID was swiftly understood as a deadly threat. *See* 2-ER-052-53.

Prisons were recognized as sites of the most serious COVID outbreaks.[1] NDOC Director Charles Daniels deemed COVID a "crisis" for prisoners in Nevada facilities. 2-ER-191. At WSCC, the Defendants-Appellants, Director Daniels, then-Warden Isidro Baca, and Caseworker Edward Gibson, who facilitated bed assignments at the facility, were each "tasked with creating, implementing, and enforcing COVID precautionary measures." 2-ER-043; 3-ER-300. To this end, Appellants were involved in ongoing email communications about COVID symptoms and infections within NDOC. 2-ER-119, 142, 173-74, 192, 198. From the outset, the statewide directive from Nevada's Governor, which Appellants submitted as summary judgment evidence, was clear: the spread of COVID "can only be reduced by minimizing contact between infected persons and non-infected persons." 2-ER-052.

## II. AS A COVID OUTBREAK CONSUMED WSCC IN NOVEMBER 2020, APPELLANTS MOVED INFECTED PRISONERS INTO MR. SMITH'S HOUSING UNIT.

By early November 2020, a major COVID outbreak was obviously brewing at WSCC. Housing Unit 1 was put on quarantine from the general population. 3-ER-

---

[1] Megan Wallace, et al., *COVID-19 in Correctional and Detention Facilities — United States, February–April 2020*, 69 Morbidity and Mortality Wkly. Rep. 587, 587-88 (2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6919e1.htm.

303. In the days leading up to November 5, a significant portion of the prisoners at WSCC were tested pursuant to a policy mandating testing for those "complain[ing] of or [] exhibiting any COVID-19 symptoms." Def.'s-Appellant's Opening Br. ("OB") 7, Dkt. No. 11.1; *see also* 2-ER-215 (prison policy was to test any prisoner with "flu-like symptoms"). On November 5, suspicions were confirmed: results came back positive for 93 prisoners, out of a total prison population of 525. 2-ER-214.

The very same day that over 15% of the prisoner population tested positive, and apparently to distribute the incarcerated workforce between housing units, Appellants transferred around twenty Unit 1 prisoners who were supposed to be on quarantine into Unit 4—where Mr. Smith was housed. 2-ER-027, 221; 3-ER-303.

As reflected in Mr. Smith's grievance, the "entire yard" was quarantined "shortly after" the bed move, including Unit 4. 3-ER-317. But it was too late. Test results the following week confirmed that an outbreak had rapidly consumed the prison, with an additional 331 prisoners testing positive. 2-ER-214. This brought WSCC's total simultaneous COVID infections to 424 out of 525 prisoners. *Id.*

Mr. Smith was one of those who fell ill after the bed move. The following day, Mr. Smith produced a sample that later tested positive for COVID. 4-ER-372. As a result of his infection, Mr. Smith suffered from debilitating body aches and chest pain and an altered sense of taste and smell. *See* 2-ER-229; 3-ER-303, 315,

317, 321. Medical records reflect that he suffered from symptoms consistent with COVID for many months after his positive test. *See* 4-ER-374, 385-86, 388-89. On March 18, 2022, for example, Mr. Smith told medical staff that he "still c[ouldn't] smell [or] taste,"and suffered from headaches and blurry vision. 4-ER-374. Medical staff noted that these symptoms were consistent with "persistent covid residual issues." *Id.*

## III. PROCEDURAL HISTORY

In December 2020, Mr. Smith filed a timely grievance related to the bed move and his severe, long-lasting COVID symptoms. 2-ER-229. Officials repeatedly denied his grievance and appeals, citing generally to WSCC's COVID policies; in his responses, Mr. Smith continued to challenge the bed move specifically. 2-ER-223-28.

After exhausting his administrative remedies, Mr. Smith filed a verified pro se civil rights complaint against Director Daniels, Warden Baca, and Caseworker Gibson. *See* 2-ER-288, 290, 299. The district court screened Mr. Smith's complaint and permitted his Eighth Amendment claim to proceed. 3-ER-328-29. Recognizing that "defendants in prison civil rights cases often hold a disproportionate share of the relevant information and prisoners have limited means and access to discovery," the district court entered a broad initial disclosure order. 1-SER-4. The court mandated that Appellants turn over all relevant "information, items, documents,

photographs, and video or audio recordings in their or their employer's possession or control" and provided that such disclosures "may be made in a redacted form, if necessary, for security or privilege purposes." *Id*. Mr. Smith moved once to extend discovery because he was occupied with his criminal appeal, and the district court granted his request. *See* 1-SER-10, 12.

Appellants moved for summary judgment, arguing *inter alia* that no genuine factual issue existed as to whether they violated the Eighth Amendment, and that they were entitled to qualified immunity. *See* 2-ER-041-48. Appellants did not directly refute that a bed move occurred on November 5, 2020, but claimed that, on some unspecified date, WSCC implemented a policy to freeze all bed moves to prevent COVID transmission. 2-ER-037, 044. The alleged freeze did not appear in any of the written policies that Appellants submitted with their motion; as evidence of the supposed freeze, they relied on an affidavit prepared by a warden at a different Nevada prison. *See* 2-ER-037, 064-65. That affidavit states that there was a "quarantine in place" policy at WSCC "[d]uring November and December of 2020," but includes no specific dates. 2-ER-065.

In his response, Mr. Smith informed the court that, despite its broad initial disclosure order, Appellants had denied virtually all of his discovery requests, citing "safety and security reasons." 2-ER-026. Specifically, Mr. Smith requested "the reason for the bed moves," records of "[t]he actual bed moves," "[i]nmates[']

9

positive COVID test[s]," "[t]he warden[']s notes [] on this subject," "[t]he caseworker[']s notes on this subject," and "[m]edical staff's policy and records." *Id*. Mr. Smith, however, received only his own medical records and NDOC's COVID-related press releases. Accordingly, Mr. Smith argued that "[Defendants] failed to produce evidence showing [his] allegations are false," and "[t]here is plenty of evidence" supporting his allegation that "can be produce[d] later at trial." 2-ER-026-27.

Using Appellants' own summary judgment exhibits, Mr. Smith's opposition argued that genuine factual issues exist as to whether the bed move occurred and whether Appellants followed their own COVID policies. 2-ER-025-27. Mr. Smith relied on Appellants' exhibits to show that NDOC changed its quarantine policy one day after the bed move and that there was a surge in COVID cases at WSCC in the days following the bed move, as reported by the November 13, 2020, press release. 2-ER-025-26; *see* 2-ER-060, 214. In their reply, Appellants stated that Mr. Smith did not "produce[] any admissible evidence to support his version of events" and that "there is no admissible evidence to show that" Appellants responded unreasonably to COVID. 2-ER-017. Beyond this general contention, Appellants did not attack Mr. Smith's verified complaint or grievance, or any portions thereof, as inadmissible. *See* 2-ER-017-18.

The magistrate judge relied on Mr. Smith's verified pro se complaint and grievance, as well as Appellants' own summary judgment exhibits, to recommend that Appellants' motion be denied. *See* 1-ER-009-13.[2] Specifically, the magistrate judge found that Mr. Smith's sworn statement that prisoners known to have COVID were transferred into his unit "directly refutes" Appellants' assertion that WSCC had halted all bed moves. 1-ER-010. The magistrate judge noted that Mr. Smith's grievance about the bed move "corroborates" his verified statement and that prison officials did not deny that a bed move occurred in their grievance responses. 1-ER-011. The magistrate judge further emphasized that the spike in COVID cases at WSCC described in Appellants' own press release coincided with the timing of the bed move. 1-ER-010-11. Accordingly, the magistrate judge concluded that Mr. Smith raised a genuine issue as to "whether Defendants were following or enforcing their own bed move and quarantine policies, and whether they moved inmates who were known to have COVID-19 from quarantine into Plaintiff's unit." 1-ER-011.

---

[2] The magistrate judge also chastised Appellants for submitting "voluminous" documents—related to another case litigated more than four years prior—without "any specific relevance to this lawsuit[,]" reminding them that "[i]t is not the court's responsibility to sift through" the record to determine whether any portions are relevant. 1-ER-010.

11

Appellants filed no objection to the report and recommendation. 1-ER-002. The district court adopted it in full. 1-ER-002-03.

Appellants filed the present appeal. Notice of Appeal, Dkt. No. 1. This Court appointed undersigned counsel to represent Mr. Smith. Order Appointing Counsel, Dkt. No. 23.

## SUMMARY OF THE ARGUMENT

I.  This Court lacks jurisdiction to consider this interlocutory appeal. The exception to the final judgment rule that permits interlocutory appeals is "limited to reviewing whether the defendants would be entitled to qualified immunity as a matter of law, assuming all factual disputes are resolved, and all reasonable inferences are drawn, in plaintiff's favor." *Peck*, 51 F.4th at 885 (citation modified). Appellants' arguments that the district court relied on inadmissible evidence do not fall into that exception, and this Court thus lacks jurisdiction. Even if some admissibility questions could be sufficiently legal to fall within this exception, the personal-knowledge arguments Appellants raise do not because they are questions of evidentiary sufficiency and credibility. Because Appellants fail to raise any arguments over which this Court does have jurisdiction, their appeal should be dismissed.

12

II. Second, even if this Court had jurisdiction to hear Appellants' personal knowledge argument, it was not preserved for appeal. Appellants did nothing to notify the district court of a personal knowledge objection to the statements in the verified complaint and grievance. The first time in this litigation that Appellants mentioned personal knowledge or attacked these statements specifically as inadmissible was in their opening brief on appeal. *See* OB at 1, 2, 10, 17-19. Even if the issue had been preserved, a reasonable factfinder could readily infer that Mr. Smith personally perceived the transfer of COVID-infected prisoners into his housing unit.

III. Third, even if Appellants had raised a legal argument based on Mr. Smith's version of events, it would plainly fail. The Ninth Circuit has squarely determined that the right of prisoners to be protected from exposure to COVID is clearly established. This Court would need only to determine whether there is a triable issue as to whether Appellants were deliberately indifferent to that risk, but it need not spend long. Here, as the district court found, the evidentiary record could lead a reasonable jury to conclude that Appellants moved prisoners they knew were infected—and, at the very least, that they moved prisoners during an obvious, massive outbreak—despite medical professionals urging that such transfers could lead to contagion.

13

IV.     Lastly, even if this Court were to find that Mr. Smith did not produce sufficient competent evidence, summary judgment would still be inappropriate. Courts apply Rule 56(d) to postpone summary judgment for further discovery when the nonmovant was unable to obtain relevant evidence. Mr. Smith was denied virtually all discovery. Appellants ignored the lower court's order to produce broad initial disclosures and stonewalled Mr. Smith's concrete and targeted discovery requests. Despite the serious disadvantages he faced as a pro se prisoner, Mr. Smith diligently sought evidence to support his case—to no avail. Applying Rule 56(d), this Court should at the very least remand with instructions to reopen discovery.

## STANDARD OF REVIEW

This Court reviews de novo the district court's denial of qualified immunity at summary judgment. *See Moran v Washington,* 147 F.3d 839, 844 (9th Cir. 1998). The Court's "scope of . . . review over the appeal [in this context] is circumscribed," however; it can only determine "whether or not certain given facts showed a violation of 'clearly established law.'" *Foster v. City of Indio*, 908 F.3d 1204, 1210 (9th Cir. 2018) (per curiam) (citation modified). In conducting this review, the Court only looks to whether Appellants "would be entitled to qualified immunity as a matter of law, assuming all factual disputes are resolved, and all reasonable

14

inferences are drawn, in plaintiff's favor." *Ballou v. McElvain*, 29 F.4th 413, 421 (9th Cir. 2022) (quoting *Estate of Anderson*, 985 F.3d at 731).[3]

## ARGUMENT

### I.   THIS COURT LACKS JURISDICTION OVER THIS INTERLOCUTORY APPEAL.

This case is before this Court based on interlocutory jurisdiction to review the denial of qualified immunity. But Appellants ask this Court to go outside the strictly circumscribed scope of interlocutory appellate jurisdiction and reverse the district court's determination that a genuine issue of material fact exists, based on their contention that Mr. Smith's verified complaint and grievance are inadmissible because he failed to sufficiently allege personal knowledge. OB at 17. But "[a]ny decision by the district court that the parties' evidence presents genuine issues of material fact is categorically unreviewable on interlocutory appeal." *George v. Morris*, 736 F.3d 829, 834 (9th Cir. 2013) (citation modified). And this Court's interlocutory jurisdiction does not extend to questions of admissibility because those

---

[3] To the extent that evidentiary rulings can be considered at all on interlocutory review (*see* discussion *infra* at pp. 16-27), they would be reviewed for abuse of discretion. *See Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017) (en banc) ("Evidentiary rulings made in the context of summary judgment motions are reviewed for abuse of discretion[.]" (citation modified)).

arguments seek to contest "which facts a party may, or may not, be able to prove at trial." *Johnson v. Jones*, 515 U.S. 304, 313 (1995). Thus, because Appellants only raise arguments contesting admissibility and the district court's finding of a genuine issue of fact—neither of which are within this Court's narrow interlocutory jurisdiction—their appeal should be dismissed.

### A. This Court Lacks Interlocutory Jurisdiction Over Questions of Admissibility.

Appellants repeatedly argue that the district court relied on inadmissible evidence in finding a genuine issue of material fact. *See, e.g.*, OB at 1, 4, 17-22, 26-28, 35. But this Court lacks jurisdiction to review admissibility determinations at this stage. The narrow exception to the general rule against appeal of an interlocutory order applies only where a summary judgment determination "resolve[s] a dispute concerning an abstract issue of law relating to qualified immunity—typically, the issue whether the federal right allegedly infringed was 'clearly established.'" *See Behrens v. Pelletier*, 516 U.S. 299, 313 (1996) (citation modified). As recognized recently by the Tenth Circuit, "[a] district court's admissibility determinations are part of its determination that a genuine fact dispute exists," *see Ellis v. Salt Lake City Corp.*, 147 F.4th 1206, 1223 (10th Cir. 2025), over which appellate courts lack interlocutory jurisdiction.

16

The boundaries of this interlocutory jurisdiction were established by three Supreme Court decisions. First, in *Mitchell v. Forsyth*, the Court established that "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law," could be immediately appealed as "a purely legal [issue]: whether the facts alleged . . . support a claim of violation of clearly established law." 472 U.S. 511, 528 n.9, 530 (1985). The Court explained that qualified immunity was appropriate for interlocutory appeal because it is "a legal issue that can be decided with reference only to undisputed facts and in isolation from the remaining issues of the case." *Id.* at 530 n.10. Then, in *Johnson v. Jones*, the Court unanimously explained that interlocutory appeal cannot be taken from a summary judgment order that "determines only a question of 'evidence sufficiency,' *i.e.*, which facts a party may, or may not, be able to prove at trial." 515 U.S. at 312. Finally, in *Scott v. Harris*, the Supreme Court carved out what this Court has described as a "narrow" exception under which an appellate court can examine whether a plaintiff's version of events is "blatantly contradicted by the record," such as by a videorecording, "so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see Estate of Anderson*, 985 F.3d at 731 n.3 (describing this exception as "narrow").

Interpreting this caselaw, this Court has explained that it has "no jurisdiction to hear interlocutory appeals from the denial of summary judgment," with an exception "limited to reviewing 'whether the defendant[s] would be entitled to

17

qualified immunity as a matter of law, assuming all factual disputes are resolved, and all reasonable inferences are drawn, in plaintiff's favor.'" *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 944 (9th Cir. 2017); *Peck*, 51 F.4th at 885 (quoting *George*, 736 F.3d at 836). Additionally, "[a] defendant cannot inject into an interlocutory appeal issues that are otherwise not immediately appealable." *Allen v. Sakai*, 48 F.3d 1082, 1085 (9th Cir. 1994).

Thus, this Court lacks jurisdiction to evaluate the admissibility of the evidence the district court relied on in finding a genuine issue of material fact. Panels of this Court have adopted this specific position in unpublished cases. In *Sneed v. Chase*, for instance, this Court refused to address the appellants' argument that the appellee's evidence was inadmissible, holding that it lacked jurisdiction to consider that argument on interlocutory appeal. *See* Appellants' Opening Br. at 37, 51-60, *Sneed v. Chase*, 266 F. App'x 545 (9th Cir. 2008) (No. 06-15833), 2006 WL 3623249 (arguing, like here, that plaintiff's evidence was inadmissible and that plaintiff therefore failed to create genuine dispute of material fact); *Sneed v. Chase*, 266 F. App'x 545, 546 (9th Cir. 2008) ("As Defendants' appeal fails to raise a question of law, we dismiss for lack of jurisdiction.").

In their Opening Brief, Appellants claim that *Plumhoff* allows this Court to exercise "jurisdiction to exclude immaterial or improperly admitted evidence." *See* OB at 4-5. Not so. In *Plumhoff*, the Court explained that the case did not turn on

18

"any purely factual issues that the trial court might confront if the case were tried;" "rather, [defendants] contend[ed] that their conduct did not violate the Fourth Amendment and, in any event, did not violate clearly established law." *Plumhoff v. Rickard*, 572 U.S. 765, 773 (2014). These are the pure questions of law that constitute the qualified immunity determinations properly before this Court on interlocutory review, and have nothing to do with admissibility. In neither the Sixth Circuit opinion below, *Estate of Allen v. City of W. Memphis*, 509 F. App'x 388 (6th Cir. 2012), *rev'd and remanded sub nom.*, *Plumhoff*, 572 U.S. at 765, nor the Supreme Court decision, did either court assert "jurisdiction to exclude immaterial or improperly admitted evidence" as Appellants imply.

Additionally, Appellants allude to *Scott v. Harris* as supporting jurisdiction, *see* OB at 4-5, but the narrow "blatantly contradicted" exception carved out in *Scott* simply does not apply. *See Scott,* 550 U.S. at 380. Appellants offer no argument that any evidence in the record contradicts Mr. Smith's version of events—much less "blatantly" so. In *George v. Morris*, for instance, this Court held *Scott* did not apply because there was "no videotape, audio recording, or similarly dispositive evidence that 'blatantly contradict[s]' or 'utterly discredit[s] [plaintiff's] side of the story." 736 F.3d at 836 (quoting *Scott*, 550 U.S. at 380). Rather, this case is much closer to the one the Supreme Court encountered in *Johnson* when it articulated the overarching rule; there, defendants alleged that plaintiffs failed to prove personal

19

involvement, the district court rejected that argument as factually contested, and the Supreme Court unanimously rejected appellate jurisdiction because it presented merely an argument about evidentiary sufficiency. *See Johnson*, 515 U.S. at 307-08, 313, 319-20.

While a panel of this Court recently wrote that "*any* issue of law, including the materiality of the disputed issues of fact, is a permissible subject for appellate review[,]" *Hart v. City of Redwood City*, 99 F.4th 543, 548 (9th Cir. 2024) (quoting *Jeffers v. Gomez*, 267 F.3d 895, 904 (9th Cir. 2001)), this dicta could not have meant that literally "any" legal issue is reviewable on interlocutory appeal without abrogating *sub silentio* multiple binding precedents in which this Court lacked interlocutory jurisdiction over pure questions of law. *See, e.g.*, *Cunningham v. Gates*, 229 F.3d 1271, 1285 & n.21 (9th Cir. 2000), *as amended* (Oct. 31, 2000) (rejecting interlocutory jurisdiction to consider appellants' argument that *Heck* bar applied, despite it appearing "quite clear" to Court that appellants were correct); *Eng v. Cooley*, 552 F.3d 1062, 1068 & n.2 (9th Cir. 2009) (rejecting interlocutory jurisdiction to review third-party standing determination because it was "independent of the qualified immunity inquiry itself and cannot be raised on interlocutory appeal").

*Hart* merely acknowledged that the questions of materiality presented there fell within the same, limited exception. This makes good sense: an argument that

"how Hart was holding the knife" when police first encountered him is immaterial to whether they used reasonable force in shooting him after he subsequently approached them is, essentially, an argument that even resolving the dispute regarding how he was initially holding the knife in favor of Hart, the officers did not violate the Fourth Amendment. *Hart*, 99 F.4th at 549-50. This approach to reviewing questions of materiality reflects settled law. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987); *see, e.g.*, *Evans v. City of Los Angeles*, 446 F. App'x 4, 5 (9th Cir. 2011) (explaining that "when the district court identifies a dispute of fact, [the Court's] jurisdiction includes determining whether that dispute is material" and exercising jurisdiction to determine that two disputed facts were immaterial); *see also Thomas v. Gomez*, 143 F.3d 1246, 1248 (9th Cir. 1998) ("[W]e lack jurisdiction to hear an interlocutory appeal where the district court denies summary judgment based on qualified immunity because material facts remain in dispute. . . . [But] an appellate court has jurisdiction to hear an interlocutory appeal where defendants assert that the district court erred in determining that the disputed facts were material.").[4]

---

[4] In *Jeffers*, this Court cited with approval several cases setting forth exactly the jurisdictional bounds described above. *See, e.g.*, *Knox v. Southwest Airlines*, 124 F.3d 1103, 1107 (9th Cir. 1997) ("[W]e have jurisdiction over an interlocutory appeal from the denial of qualified immunity where the appeal focuses on whether the defendants violated a clearly established law given the undisputed facts, while

The only additional question of law over which this Court has asserted jurisdiction, beyond the core qualified immunity issues discussed above, is whether a *Bivens* cause of action existed.[5] *See Pettibone v. Russell*, 59 F.4th 449, 453-54 (9th Cir. 2023). But doing so was entirely consistent with prior doctrine. The existence of a cause of action is a prerequisite for the first prong of the qualified-immunity analysis: whether a federal right was violated. *See Wilkie v. Robbins*, 551 U.S. 537, 549 n.4 (2007); *Hernández v. Mesa*, 582 U.S. 548, 553 (2017) (quoting *Wood v. Moss*, 572 U.S. 744, 757 (2014)) ("[T]he *Bivens* question . . . is 'antecedent' to the other questions presented.").

---

we do not have jurisdiction over an interlocutory appeal that focuses on whether there is a genuine dispute about the underlying facts."); *Farmer v. Moritsugu*, 163 F.3d 610, 614 (D.C. Cir. 1998) (holding that jurisdiction exists when defendant "has effectively conceded the facts as alleged by [the plaintiff], contesting instead whether those facts could support a conclusion that he violated [the plaintiff's] constitutional rights"); *Jeffers*, 267 F.3d at 904-05 (quoting *Knox* and *Moritsugu*).

[5] While a panel of this Court recently exercised interlocutory appellate jurisdiction to review the legal standard applied to a procedural question at summary judgment, this case lacks precedential value both because it is unpublished and because the panel did not address the jurisdictional issue at all and neither party briefed it. *See Cortez v. Stubbs*, No. 24-2714, 2025 WL 1588735 (9th Cir. June 5, 2025). The Supreme Court has "repeatedly held that the existence of unaddressed jurisdictional defects has no precedential effect." *Lewis v. Casey*, 518 U.S. 343, 352 n.2 (1996).

**B.    This Court Should Join the Majority of Circuits Which Have Addressed the Question Directly and Hold That Interlocutory Review of Qualified Immunity Denials Does Not Extend to Questions of Admissibility.**

Several circuits—the Sixth, Seventh, Tenth, and Eleventh—have explicitly rejected the jurisdiction sought by Appellants here on the grounds that, while "admissibility is a legal issue, . . . [it] is not the sort of legal issue 'sufficiently separable from the merits so as to provide [an appellate court] with jurisdiction in a collateral-order appeal.'" *Ellis v. Salt Lake City Corp.*, 147 F.4th at 1224 n.8 (quoting *Whitlock v. Brueggemann*, 682 F.3d 567, 575 (7th Cir. 2012)).

In a case nearly identical to this one, although presenting a hearsay rather than personal-knowledge question, the Sixth Circuit framed the question: "In a qualified immunity appeal by a state official, should the court of appeals look behind a *Johnson v. Jones* type factual dispute to determine if the factual dispute is based only on uncorroborated hearsay that will not be admissible at trial[?]" *Ellis v. Washington Cnty., Tenn.*, 198 F.3d 225, 229 (6th Cir. 1999). The Sixth Circuit not only found jurisdiction doctrinally foreclosed but also explained that "[t]o decide on interlocutory appeal all of the possible fact related evidence questions present in the case would, as the Supreme Court observed, 'consume inordinate amounts of appellate time'" and cause "even 'greater delay' in bringing cases to a conclusion." *Id.* (quoting *Johnson*, 515 U.S. at 316). It reached this conclusion even though

23

accepting jurisdiction would have resulted in reversal and an end to the case, because "the only factual dispute" arose from "the rankest type of inadmissible hearsay." *Id.*

Last year, the Tenth Circuit set forth the state of the law and joined the majority of circuits which have addressed the issue by holding that "evidentiary objections are beyond the scope of [appellate] interlocutory jurisdiction." *Ellis v. Salt Lake City Corp.*, 147 F.4th at 1223. In so doing, the Tenth joined the Sixth, Seventh, and Eleventh Circuits.[6] The court explained that "[a] district court's admissibility determinations are part of its determination that a genuine fact dispute exists—that is, a determination about 'which facts a party may, or may not, be able to prove at trial[.]'" *Ellis v. Salt Lake City Corp.*, 147 F.4th at 1223 (quoting *Johnson*, 515 U.S. at 313). As the Seventh Circuit explained when faced with an argument that the district court relied solely on hearsay: "No matter how vigorously . . . defendants contend that these issues are the sort of abstract legal questions we have jurisdiction to review at this stage of the litigation, they are not. They are merely a 'back-door effort to contest the facts.'" *Whitlock*, 682 F.3d at 574 (quoting *Jones v. Clark*, 630 F.3d 677, 680 (7th Cir. 2011)).

---

[6] *See Ellis v. Washington Cnty.*, 198 F.3d at 229; *Locke v. Haessig*, 788 F.3d 662, 672 n.4 (7th Cir. 2015); *Bridges v. Morgan*, No. 21-12425, 2022 WL 342905, at *3 (11th Cir. Feb. 4, 2022) (per curiam).

While two circuits have asserted interlocutory jurisdiction over admissibility issues, their decisions were narrow or have been called into question. The Eighth Circuit once exercised interlocutory jurisdiction over an admissibility question it appeared to review de novo, characterizing it as "a purely legal issue under the rules of evidence." *Glaze v. Byrd*, 721 F.3d 528, 532-33 (8th Cir. 2013). The Fifth Circuit's decision was broader, *see Mersch v. City of Dallas*, 207 F.3d 732, 735 (5th Cir. 2000), but it has since been called into question by another panel of that court, which identified its tension with *Johnson* and correctly noted that admissibility issues "arguably involve[] the district court's assessment of the facts established by or inferable from the evidence." *Hardesty v. Cochran*, 621 F. App'x 771, 777 n.30 (5th Cir. 2015) (per curiam) (citation modified). Neither case supports the application of interlocutory jurisdiction to personal-knowledge-related challenges to admissibility.

This Court should explicitly join the majority of circuits and hold that questions of admissibility are categorically outside the scope of interlocutory jurisdiction over denials of qualified immunity.

### C. Personal-Knowledge Admissibility Challenges Raise Questions of Evidentiary Sufficiency and Credibility and Present an Especially Strong Case Against Interlocutory Jurisdiction.

Even absent a per se rule that all admissibility issues are unreviewable on interlocutory appeal, this Court should hold, at a minimum, that it lacks interlocutory

jurisdiction to review Appellants' personal-knowledge admissibility arguments. Personal knowledge questions are, at base, questions of credibility and evidentiary sufficiency—as factual as they come. As between jury and judge, "it is the function of the jury, not the court, to determine credibility; . . . the role of the judge is to determine 'not whether the witness did perceive the matter, but whether a jury or other trier of fact could reasonably believe that the witness perceived it.'" *United States v. Owens-El*, 889 F.2d 913, 915 (9th Cir. 1989) (quoting Model Code of Evidence, Comment on Rule 104 (A.L.I. 1942)).

The deferential standard under which this Court considers lower-court personal-knowledge admissibility rulings on summary judgment further removes this case from the ambit of interlocutory review. It would be illogical to review a decision for abuse of discretion under an exception to the final judgment rule which the Supreme Court has described as limited to "'neat abstract issues of law'" over which appellate judges possess "comparative expertise[.]" *Johnson*, 515 U.S. at 317 (quoting 15A Wright & Miller's Federal Practice and Procedure § 3914.10 (2d ed. 1992)); *compare with Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401-02 (1990) (explaining that because it is "[f]amiliar with the issues and litigants, the district court is better situated than the court of appeals to marshal the pertinent facts and apply . . . fact-dependent legal standard[s]," including for "[i]ssues involving credibility"); *see also United States v. Sheppard*, 17 F.4th 449, 454 (3d Cir. 2021)

26

("Underlying our review for abuse of discretion are the principles that: 1) a district court may have a 'better vantage point than we on the Court of Appeals to assess the matter,' and 2) 'courts of appeals apply the abuse-of-discretion standard to fact-bound issues that are ill-suited for appellate rule-making.'" (quoting *United States v. Tomko*, 562 F.3d 558, 565 (3d Cir. 2009) (en banc))).

Other than the Fifth Circuit rule allowing review of admissibility decisions,[7] there appear to be *no other* instances in which circuit courts exercise interlocutory jurisdiction over denials of qualified immunity to decide issues on which they must defer to district courts. Some admissibility issues *may*, relatively speaking, be better suited for interlocutory review because they are purely legal and thus reviewed de novo. For example, the Eighth Circuit, as discussed above, did once exclude evidence as hearsay on interlocutory review, but it characterized its analysis as "a purely legal issue under the rules of evidence" and appeared to apply a de novo standard. *See Glaze*, 721 F.3d at 532. But fact-bound questions of personal knowledge are certainly not among them.

---

[7] See *Mersch*, 207 F.3d at 735 ("We review the admissibility of Mersch's testimony for manifest error.").

**D.  This Court Lacks Jurisdiction to Hear This Appeal Because Appellants Seek Only to Relitigate the Facts Mr. Smith Will be Able to Prove at Trial.**

Because Appellants fail to raise any argument over which this Court does have jurisdiction, their appeal should be dismissed. While Appellants "attempt to evade *Johnson*'s jurisdictional bar by characterizing their arguments as legal ones[,]" this Court has not hesitated to dismiss for lack of jurisdiction where appellants make "poorly disguised" arguments aimed at proving that "the evidence is insufficient to raise a genuine issue of fact[.]" *Peck*, 51 F.4th at 886.

Here, Appellants do not advance an argument that they are entitled to "qualified immunity under [Mr. Smith's] version of the disputed facts[,]" which is the only question this Court may address. *See Wilkins v. City of Oakland*, 350 F.3d 949, 952 (9th Cir. 2003). Jurisdiction exists when the defendant "has effectively conceded the facts as alleged by [the plaintiff], contesting instead whether those facts could support a conclusion that he violated [the plaintiff's] constitutional rights." *Moritsugu*, 163 F.3d at 614; *see Jeffers*, 267 F.3d at 905 (citing *Moritsugu* with approval). Appellants make no such argument and instead attack only what facts Mr. Smith can prove and the district court's finding of disputes of fact. Consider the following arguments in Appellants' Opening Brief:

- Appellants argue that "the district court wrongly concluded Smith presented admissible evidence establishing 'a dispute as to [material facts].'" OB at 17.

- Appellants argue that "Smith's complaint and grievance provided no basis for the district court to conclude that he had any personal knowledge concerning whether . . . they moved offenders who were known to have COVID-19 from quarantine into Plaintiff's unit." OB at 19.

- Appellants argue that "the district court points to no evidence, admissible at trial, which would establish [Appellants' personal involvement in the violation]. . . . Smith only offers inadmissible conclusory allegations in his Complaint to speculate that Defendants knew that any offender in Unit 1 had contracted COVID-19 prior to the supposed bed move." OB at 25-26.

- Appellants argue that "Smith offers no evidence admissible at trial establishing" that he suffered the clearly established constitutional violation recognized in *Hampton*. OB at 35.

In the closest they come to raising a legal question over which this Court has jurisdiction, Appellants argue that "Smith failed to establish that the supposed transfer of offenders from Unit 1 to Unit 4 was the actual and proximate cause of his contracting COVID-19[.]" OB at 32. Implicit in this contention seems to be a legal argument that he was required to prove that they caused him to get sick. However, Appellants never expressly make this argument—presumably, because it is flatly wrong. They correctly state that "Smith must establish the 'requisite causal connection between each individual prison official's actions and the [E]ighth [A]mendment violation[,]'" OB at 30 (quoting *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988)), but the Eighth Amendment violation at issue is exposure to the

"intolerable *risk* of [serious] harm," as Appellants themselves repeatedly recite, not the infection that may result. OB at 1, 6, 14, 23, 26, 27, 36 (emphasis added).[8]

Appellants fail to advance any argument within the bounds of this Court's interlocutory jurisdiction, and this Court should dismiss for lack of subject matter jurisdiction. *See, e.g.*, *Voskanyan v. Upchurch*, No. 21-55333, 2022 WL 4181664, at *1 (9th Cir. Sept. 13, 2022) (holding that jurisdiction was lacking because, "[a]lthough Appellants briefly argue that their conduct does not violate clearly established law, they do so exclusively by asking this Court to take *their* version of the facts as true and arguing that *this* version of events does not violate . . . clearly established constitutional rights").

**II.     EVEN IF THIS COURT HAD JURISDICTION TO REVIEW IT, APPELLANTS' ARGUMENT THAT THE STATEMENTS IN MR. SMITH'S VERIFIED PRO SE COMPLAINT AND GRIEVANCE ARE NOT BASED ON PERSONAL KNOWLEDGE DOES NOT WARRANT REVERSAL.**

Appellants argue that the district court erred by relying on statements in Mr. Smith's verified pro se complaint and grievance to deny summary judgment because, they claim, those statements are not based on personal knowledge. OB at 1, 2, 10,

---

[8] Whether Appellants caused Mr. Smith to contract COVID, much like the severity of his symptoms, is a question relevant to damages, but not to the qualified immunity analysis.

17-19. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (statements in pro se party's verified complaint may be considered as summary judgment evidence where they "are based on personal knowledge and set forth facts that would be admissible in evidence"); *see* Fed. R. Civ. P. 56(c)(4) (summary judgment affidavit requirements).[9]

Appellants' personal knowledge argument does not warrant reversal for two reasons. First, the argument was not preserved for appeal because Appellants did not object below. Appellants' vague and general references to a lack of admissible evidence in their summary judgment reply did not notify the district court of a specific personal knowledge objection to the statements in the verified complaint and grievance. *See* 2-ER-017. Second, even if the issue had been preserved, a factfinder could reasonably infer that the pertinent statements are based on Mr. Smith's personal perceptions. *See* 1-ER-010-11.

---

[9] The grievance is not subject to the same *Jones* personal knowledge requirement as the complaint, but because the magistrate judge's report and recommendation relied on the statements in the grievance for their truth, those statements must be based on personal knowledge to be admissible. *See* 1-ER-011.

31

**A. The Issue Is Not Preserved Because Appellants Failed to Adequately Notify the District Court of a Personal Knowledge Objection.**

This Court "will not reverse a district court on the basis of a theory that was not raised below." *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 546 n.15 (9th Cir. 1991). To preserve an evidentiary objection for appeal, a party must "adequately put the district court on notice of its objection." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1003 (9th Cir. 2002) (hearsay objection preserved because party filed "Objection to Evidence Offered by Plaintiff in Opposition to Motion for Summary Judgment").

Appellants did nothing to notify the district court of a personal knowledge objection to the statements in the verified complaint and grievance. The first time in this litigation that Appellants mentioned personal knowledge or attacked the pertinent statements in the verified complaint and grievance as inadmissible was in their opening brief on appeal. OB at 1, 2, 10, 17-19. Appellants did not raise a personal knowledge objection in their summary judgment motion or reply. 2-ER-016-20, 035-48. Most strikingly, Appellants did not object at all to the report and recommendation, which explicitly relied on statements in the verified complaint and grievance as summary judgment evidence. 1-ER-010-11.

Appellants made two cursory references to admissibility in their summary judgment reply, stating generically that Mr. Smith did not "produce any admissible

evidence to support his version of events" and that "there is no admissible evidence to show that" Appellants responded unreasonably to the pandemic. 2-ER-017. These vague assertions are not evidentiary objections because they do not indicate which evidence is allegedly inadmissible and why. They do not indicate "the specific ground of objection and, consequently, what could be done to cure any defects." *Sandoval v. County of San Diego*, 985 F.3d 657, 666-67 (9th Cir. 2021) (finding that district court abused its discretion when it sustained "one-word objections for 'foundation'" lodged against specific documents because objections "fell well short" of specifying grounds).

To properly object, Appellants needed to point to specific statements in the verified complaint and grievance and explain why they believed those statements were inadmissible to prove a given fact. *See Perma Rsch. & Dev. Co. v. Singer Co.*, 410 F.2d 572, 579 (2d Cir. 1969) ("[T]he motion to strike was much too general in that it did not specify which parts of the . . . affidavit should be stricken and why. . . . [T]he plaintiff was required to do more than swing its bludgeon wildly."); *see also* 10B Wright & Miller's Federal Practice and Procedure § 2738 (4th ed.) ("[A] motion to strike should specify the objectionable portions of the affidavit and the grounds for each objection. A motion asserting only a general challenge to an affidavit will be ineffective."). Any attempt by Appellants to characterize their vague references to a general lack of admissible evidence as proper evidentiary objections

33

must be rejected. *Cf. Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (hearsay objection to diary entries preserved where it was "specific" and "clear").

If Appellants had objected adequately below, Mr. Smith would have had an opportunity to show the district court that the statements in his verified complaint and grievance were "admissible as presented or to explain the admissible form that [was] anticipated." *Sweet People Apparel, Inc. v. Phoenix Fibers, Inc.*, 748 F. App'x 123, 124 (9th Cir. 2019) (quoting Fed R. Civ. P. 56 advisory committee's note to 2010 amendment). Permitting Appellants to raise the personal knowledge issue on appeal would deprive Mr. Smith of the opportunity to make that record below.[10]

Because Appellants failed to object, the district court properly relied on the statements in the verified complaint and grievance without assessing whether they are based on personal knowledge.[11] *See* 1-ER-010-11; *Skillsky v. Lucky Stores, Inc.*,

---

[10] To the extent Appellants even gestured at an admissibility issue below, Mr. Smith had no opportunity to respond because they did so only in their reply. 2-ER-017. The verified complaint and grievance were in the record by the time Appellants filed their motion; it was predictable that Mr. Smith, acting pro se, would rely on them to oppose summary judgment because—thanks to Appellants' failure to comply with the initial disclosure order—they were virtually the only evidence he was able to submit. *See Jerden v. Amstutz*, 430 F.3d 1231, 1236-37 (9th Cir. 2005) ("An objection is 'timely' if it is made as soon as the opponent knows, or should know, that the objection is applicable." (citation modified)).

[11] The absence of any ruling by the district court is further indication that Appellants failed to notify the court of an objection. *See* 1-ER-010-11. *Cf. Alaska Airlines*, 948 F.2d at 546 n.15 (fact that "the district court discussed [a] theory at

893 F.2d 1088, 1094 (9th Cir. 1990) ("For purposes of summary judgment, the court had to consider the testimony, even if it was hearsay, because [the defendant] failed to object."); *United States v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970) (Wright, J., concurring) (discussing "well-settled rule that affidavits not in compliance with Rule 56(e) [now 56(c)(4)] may be considered by the trial court in the absence of an objection by counsel").

### B.    Even If the Issue Had Been Preserved, a Reasonable Factfinder Could Infer That the Statements Are Based on Personal Knowledge.

Even if the issue had been preserved, Appellants' personal knowledge argument is unavailing; a reasonable factfinder could infer that Mr. Smith personally perceived the events set forth in his verified complaint and grievance. *See United States v. Lopez*, 762 F.3d 852, 863 (9th Cir. 2014) ("Personal knowledge means knowledge produced by the direct involvement of the senses."); *Owens-El*, 889 F.2d at 915 (explaining that question is "not whether the witness did perceive the matter, but whether a jury or other trier of fact could reasonably believe that the witness perceived it" (citation modified)); *see also* Fed. R. Evid. 602 ("A witness may testify

---

length" in its summary judgment order was "[m]ost important[]" indication that it was preserved for appeal).

to a matter only if evidence is introduced *sufficient to support a finding* that the witness has personal knowledge of the matter." (emphasis added)).

Because Mr. Smith was a pro se prisoner plaintiff, the statements in his verified complaint and grievance must be liberally construed and this Court "should avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010); *see also Scharf v. U.S. Att'y Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979) ("[C]ourts generally are much more lenient with the affidavits of a party opposing a summary judgment motion.").

Mr. Smith's "personal knowledge . . . [is] reasonably inferred from [his] position[] and the nature of [his] participation in the matters to which [he] swore." *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990). The fact that Mr. Smith saw approximately twenty prisoners move into Unit 4 on November 5, 2020, can be reasonably inferred from the undisputed fact that Mr. Smith was housed in Unit 4 on that date. 1-ER-009. *See, e.g.*, *Hinojosa v. Johnson*, 277 F. App'x 370, 377 n.10 (5th Cir. 2008) (prisoner had personal knowledge that dorms were largely unsupervised and lacked surveillance system); *Taylor v. Neal*, No. 3:25-cv-613, 2026 WL 395145, at *2 (N.D. Ind. Feb. 12, 2026) (prisoner would have personal knowledge of "restrictive conditions of her current housing placement").

Appellants argue that Mr. Smith "could not possibly know" whether the bed move occurred on November 5, 2020, because he was quarantined on that day. OB

at 10. The record, however, does not support this unequivocal statement. It does not specify what time of day the bed move occurred or what time of day Mr. Smith was placed in quarantine. Thus, a reasonable factfinder could infer that Mr. Smith was quarantined after he saw the bed move. The grievance supports this inference because it states that Mr. Smith, along with the "entire yard," was quarantined "shortly after" the bed move. 3-ER-317. *See* Fed. R. Evid. 602 ("Evidence to prove personal knowledge may consist of the witness's own testimony."). Alternatively, a factfinder could reasonably infer that Mr. Smith saw or heard the transferred prisoners enter his unit while he was already in quarantine. The record does not specify the conditions of Mr. Smith's quarantine or contain any support for Appellants' sweeping contention that those conditions made it impossible for him to personally perceive the bed move.[12]

---

[12] As discussed *infra* at 45-48, Mr. Smith's testimony that the bed move occurred, in concert with other record evidence introduced by Appellants, is enough to create a triable issue as to whether Appellants, who were by their own admission in charge of "COVID precautionary measures[,]" committed a clearly established Eighth Amendment violation by permitting a bed move amidst a major COVID outbreak—regardless of whether the specific prisoners moved were known by Appellants to be infected. 2-ER-43. Thus, Mr. Smith's verified statement that approximately twenty prisoners were transferred into his housing unit on November 5, 2020, is the only one that must be supported by personal knowledge to defeat summary judgment.

Likewise, nothing in the record forecloses a reasonable inference that Mr. Smith personally perceived the fact that the transferred prisoners were sick. A factfinder could reasonably infer that Mr. Smith saw visibly sick prisoners and/or heard audibly sick prisoners enter his housing unit. Especially given that it was just months into the pandemic, anyone in Mr. Smith's position would have been on high alert as to whether the transferred prisoners were exhibiting COVID symptoms. Alternatively, a factfinder could reasonably infer that Mr. Smith had observed the fact that Unit 1 was on quarantine—and the associated fact that prisoners in Unit 1 were sick—and then saw prisoners whom he knew were housed in Unit 1 and were supposed to be in quarantine enter his housing unit on November 5, 2020.

Appellants argue Mr. Smith "could not possibly know" that any transferred prisoner had COVID because he "offer[ed] no positive COVID-19 test results," and "to the extent the district court found a question of material fact that offenders in Unit 1 contracted COVID-19 prior to the supposed bed move, the district court also erred as a matter of law because Smith provided no admissible medical evidence to support this allegation." OB at 10, 20. But the very case law relied upon by Appellants shows why their argument fails: while medical evidence may be required when the ailment at issue, "unlike, for example, broken legs or bullet wounds, do[es] not clearly manifest [itself] in ways that are obvious and ascertainable to a lay person," COVID presents with flu-like symptoms—including cough, runny nose,

38

diarrhea and vomiting—that are easy for onlookers to observe. *Montgomery v. Pinchak*, 294 F.3d 492, 504 (3d Cir. 2002) (expert medical testimony required for prisoner plaintiff to "prove any serious deterioration in his heart's condition or in his immune system"); OB at 20-21 (discussing *Montgomery*).

Further, a reasonable factfinder could infer that Mr. Smith knew that Appellant prison officials were, as they themselves admit, "tasked with creating, implementing, and enforcing COVID precautionary measures." 2-ER-043. *See, e.g.*, *Tatum v. Lucas*, No. 11-C-1131, 2020 WL 5015828, at *2 (E.D. Wis. 2020) ("It is at least reasonable to think that an inmate at the jail will have personal knowledge about the jail's policies[.]"). These admittedly included a protocol to halt bed moves when an outbreak was underway.[13] 2-ER-017 ("stop institutional transfers or bed transfers"). It would also be reasonable to infer that Appellant Gibson, a caseworker, was on site to facilitate the bed move and that Mr. Smith saw him doing so.

For the foregoing reasons, the pertinent statements in Mr. Smith's verified complaint and grievance are supported by personal knowledge. They are also,

---

[13] Whether and when Appellants actually halted bed moves at WSCC is a disputed fact question that makes this case ripe for trial, as the district court below properly concluded. 1-ER-011 (recommending that summary judgment be denied because Mr. Smith "raise[d] a dispute as to whether Defendants were following or enforcing their own bed move and quarantine polices, and whether they moved inmates who were known to have COVID-19 from quarantine into Plaintiff's unit").

39

contrary to Appellants' insistence, OB at 1, 17, 18, 19, 26, far from conclusory; they include specific factual data, such as the date of the bed move, the number of prisoners moved, and which units the prisoners were moved from and to. 3-ER-303; *see United States. v. Shumway*, 199 F.3d 1093, 1104 (9th Cir. 1999) (affidavit not conclusory where it sets forth "a number of material facts"). This Court should treat the statements—as the district court did—as competent summary judgment evidence. Alternatively, and at the very most, this Court should remand with instructions to conduct the personal knowledge analysis in the first instance given the district court's "wide discretion" to make admissibility determinations. *United States v. Abel*, 469 U.S. 45, 54 (1984).

### III.   APPELLANTS VIOLATED A CLEARLY ESTABLISHED RIGHT WHEN THEY MOVED SEVERAL PRISONERS TO MR. SMITH'S UNIT DESPITE AWARENESS OF A COVID OUTBREAK IN THEIR PRISON.

To the extent Appellants raised a legal argument that Mr. Smith's facts fail to show they violated his clearly established right, it is dispatched with easily. This Court "must affirm the district court's denial of qualified immunity if, resolving all factual disputes and drawing all inferences in [the plaintiff's] favor, [the defendants'] conduct (1) violated a constitutional right that (2) was clearly established at the time of the violation." *Ballou,* 29 F.4th at 421. Here, the district court found a genuine dispute as to whether Appellants violated Mr. Smith's Eighth Amendment rights

40

when they ordered a bed transfer, amid a COVID outbreak, from Unit 1 to Mr. Smith's housing unit, Unit 4.

The Eighth Amendment prohibition against "cruel and unusual punishments" requires prison officials to protect against "condition[s] of confinement that [are] sure or very likely to cause serious illness" including "infectious maladies." U.S. Const. amend. VIII; *Helling v. McKinney,* 509 U.S. 25, 33 (1993) (citing *Hutto v. Finney*, 437 U.S. 678, 682 (1978)). This requirement places a duty on prison officials to "take reasonable measure[s] to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 518, 526-27 (1984)). The Eighth Amendment offers relief to prisoners who suffered (1) an objectively, "sufficiently serious" deprivation; where (2) the defendant official acted subjectively with "deliberate indifference" to this deprivation. *Id.* at 834.

### A.    The Right to Be Protected from Exposure to a Serious Disease, Like COVID, Has Been Clearly Established for at Least Thirty Years.

Qualified immunity "shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (citation modified).

This Court already recognized, in Spring 2020, that the right to be protected from exposure to COVID is clearly established. *Hampton v. California,* 83 F.4th

41

754, 770 (9th Cir. 2023). In *Hampton*, the defendants—a group of high-level prison officials—had initiated a prisoner transfer between California prisons during the COVID pandemic, despite concern that transfers could carry a significant risk of spreading transmission of COVID. *Id.* at 758-59. On an interlocutory appeal denying defendants' 12(b)(6) motion, this Court explicitly held that "all reasonable prison officials would have been on notice in [Spring] 2020 that they could be held liable for exposing inmates to a serious disease, including a serious communicable disease." *Id.* at 770. Indeed, "[a]lthough COVID-19 may have been unprecedented, the legal theory that [the *Hampton*] Plaintiff assert[ed] [was] not." *Id.* (citation modified).

In *Hampton,* this Court recognized that "a societal consensus had emerged by May 2020" that the risk of contracting COVID was so severe that involuntarily exposing prisoners to COVID "violated then-current standards of decency" thus satisfying the objective prong of this Eighth Amendment claim. *Id.* at 766.[14] In

---

[14] This "societal consensus" had not changed by November 2020. *See, e.g.*, *Lopez v. Praveen*, No. 21-cv-02380, 2024 WL 3968425, at *3 (E.D. Cal. Aug. 28, 2024) ("[T]he right to be protected against a heightened exposure to serious, easily communicable diseases, including COVID-19, was clearly established at the time of plaintiff's infection in November 2020."), *report and recommendation adopted sub nom.*, *Lopez v. Singh*, 2024 WL 4347662 (E.D. Cal. Sept. 30, 2024). Indeed, COVID vaccines were not yet available.

reaching its conclusion, this Court looked to society's response to COVID, such as shelter-in-place orders and mask mandates. *See Hampton*, 83 F.4th at 766. The record in this case likewise reflects Nevada's—and NDOC's—recognition of the seriousness of the risk. *See* 2-ER-052 (Governor Steve Sisolak's March 31, 2020, Stay at Home Order); 2-ER-190-91 (NDOC press release recognizing COVID pandemic as "threat" and "crisis"); 2-ER-192 (email from NDOC Public Information Officer declaring that protocols at High Desert State Prison were implemented "to contain the spread of COVID-19").

As this court recognized in *Hampton*, the right to be free from exposure to a serious communicable disease has consistently been recognized as a clearly established right, since well before this Court confirmed the rule's applicability to COVID specifically. *See id.* at 769. Thirty years ago, in *Helling,* the Supreme Court held that involuntarily exposing a prisoner to secondhand tobacco smoke by requiring him to share a cell with a heavy smoker could form the basis of an Eighth Amendment claim, in part because the conduct shared similarities with another Eighth Amendment violation: "exposure of inmates to a serious, communicable disease." *Helling*, 509 U.S. at 33. Since *Helling*, this Court has repeatedly recognized the right to be free from exposure to serious disease as clearly established. *See Hampton*, 83 F.4th at 770 (relying on five other Ninth Circuit cases to determine that exposure to serious disease violates a clearly established right).

Despite this overwhelming case law clearly establishing the right to be protected from exposure to a serious communicable disease—and specifically COVID—Appellants nonetheless attempt to recharacterize the protected right in order to contend that they did not violate it. To this point, Appellants make two arguments: (1) their actions may not have caused Mr. Smith to contract COVID, OB at 30-32, and (2) even if Mr. Smith did contract COVID, he is no longer suffering from it and thus did not experience significant harm. *Id.* at 33-34.

Both arguments fail for the same reason: there is an important "difference between a claim that an inmate has already suffered harm and a claim that he has been exposed to a substantial risk of serious harm." *Parsons v. Ryan*, 754 F.3d 657, 677 (9th Cir. 2014). Rather than whether the bed move caused Mr. Smith's infection, "the correct issue for consideration" is the exposure to a "serious *risk* of substantial harm." *Thomas*, 611 F.3d at 1150 n.5 (citing *Farmer*, 511 U.S. at 837; *Helling*, 509 U.S. at 32) (noting that district court erred in considering whether prisoner had already suffered harm rather than whether he had been exposed to risk of harm); *see also Hampton*, 83 F.4th at 770 ("[A]ll reasonable prison officials would have been on notice in 2020 that they could be held liable for *exposing* inmates to a serious disease[.]" (emphasis added)). If Appellants can convince the jury at trial that the bed move did not cause Mr. Smith's infection, or that his symptoms were mild or short-lived, they will avoid significant (perhaps, any) compensatory damages. But

44

these questions have no bearing on liability. *See Parsons*, 754 F.3d at 680 ("Some inmates may not actually be harmed, but they are all allegedly exposed to a risk of harm that is, in its own right, a constitutional injury[.]").

### B. A Triable Issue Exists as to Whether Appellants Acted with Deliberate Indifference in Risking Mr. Smith's Exposure to COVID.

The subjective component of this claim requires an issue of triable fact as to whether prison officials "acted, subjectively, with 'deliberate indifference' to inmate health or safety." *Hampton*, 83 F.4th at 766 (quoting *Farmer*, 511 U.S. at 834). In other words, it asks whether officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and actually "dr[ew] the inference." *Id.* at 767.

Appellants contend that there is no evidence that they knew "transferring offenders from Unit 1 posed any risk of harm." OB at 26. Not so. As the district court recognized, a jury could conclude that on November 5, 2020—eight months into the COVID pandemic—Appellants moved approximately 20 prisoners from Unit 1 to Unit 4, despite knowing that they were infected with COVID. 1-ER-002, 011.

Even if Appellants were able to show at trial that they had not yet received these prisoners' test results—which were returned that day—by the time the bed move occurred, a jury could still easily conclude that they were on notice of the risk

45

it posed. It was obvious an outbreak was brewing. Based on their policy to test prisoners who exhibited "flu-like symptoms," 2-ER-215, Appellants had administered tests to over 100 prisoners—roughly a fifth of all those incarcerated at the facility—several days prior. 2-ER-214. Even before the results came back, these prisoners' symptoms alone would have demonstrated to officials the risk of contagion. *Lopez,* 2024 WL 3968425, at *4 (denying summary judgment where prison official exhibiting symptoms of COVID worked near prisoner, despite official not having yet tested positive).

Appellants were on notice, too, of the risks that movement posed. According to Warden Nethanjah Breitenbach, who ran another facility but had personal knowledge of the COVID policies and protocols at WSCC, WSCC's directives from its own medical professionals "were to 'quarantine in place'" because "moving inmates around to other units could further contaminate the facility." 2-ER-065. And, in July, the CDC warned prisons to "[m]ake every possible effort to . . . minimize movement across housing units[.]" 2-ER-069, 078. Likewise, ample evidence supports the inference that Appellants were aware of the risk associated with moving prisoners during an outbreak. Since the beginning of the pandemic, Director Daniels, Caseworker Gibson, and Warden Baca, were on several email chains detailing symptoms of COVID and the status of COVID infections within NDOC. 2-ER-142, 173-4. And in previous emails, Director Daniels had been

46

directly informed of positive COVID tests. 2-ER-198. Likewise, Warden Baca had been informed early in the pandemic about updates on COVID. 2-ER-119. Finally, Unit 1, from where the prisoners were moved, was on quarantine from the general population the day the bed move occurred. 3-ER-303.

Accordingly, a jury could find that Appellants had knowledge of the risks associated with the bed move. In fact, this Court has already affirmed a denial of quality immunity under similar circumstances. *See Maney v. Oregon,* No. 24-2715, 2025 WL 1794110 (9th Cir. June 30, 2025). In *Maney*, the district court found that the defendants were not entitled to qualified immunity because, among other things, the defendants failed to "minimiz[e] mixing of individuals from different housing units" despite CDC guidance recommending the defendants to do so—the same CDC guidance available to Appellants here. *See Maney v. Oregon*, 729 F. Supp. 3d 1087, 1131-32 (D. Or. 2024).

Appellants claim this case cannot be analogized to *Hampton* because, they contend, Mr. Smith has not offered admissible evidence "that any Defendant actually knew that his or her actions posed" a serious risk of harm, whereas "[i]n *Hampton*, emails documented that prison officials made the affirmative decision to transfer prisoners to another prison, even though they were repeatedly warned that the transfer would result in a high possibility of spreading COVID-19." OB at 35-36. But according to Appellants' own summary judgment evidence, the same kinds of

47

warnings were present here. S*ee* 2-ER-065 (Warden Breitenbach declaration reflecting WSCC officials' understanding that "moving inmates around to other units could further contaminate the facility"); s*ee also* 2-ER-078 (CDC guidance warning prisons to "[m]ake every possible effort to . . . minimize movement across housing units").

Appellants attempt to rely on *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613 (9th Cir. 2021), but this is unpersuasive. *See* OB at 28. In *Fraihat*, the district court had granted a preliminary injunction that applied to all immigration detention facilities in the United States, imposing broad obligations on the federal government. *Fraihat*, 16 F.4th at 618. In reversing, this Court explained that its "holding [was] a function of the sweeping relief plaintiffs sought and the demanding legal standards that governed the request . . . . To obtain the extraordinary relief they sought, plaintiffs needed to come forward with evidence of constitutional and statutory violations on a programmatic, nationwide level." *Id.* That is not the situation, nor the standard, in this individual damages action.

## IV. EVEN IF MR. SMITH DID NOT PROVIDE SUFFICIENT EVIDENCE TO OPPOSE SUMMARY JUDGMENT, THE COURT SHOULD REMAND WITH INSTRUCTIONS TO REOPEN DISCOVERY UNDER RULE 56(D) RATHER THAN REVERSE AND GRANT SUMMARY JUDGMENT.

Even if the Court were to agree with Appellants that Mr. Smith failed to provide sufficient evidence to oppose summary judgment, the proper course would

48

be to remand with instructions to reopen discovery pursuant to Federal Rule of Civil Procedure 56(d), rather than to reverse and grant summary judgment.

Rule 56(d) allows the court to defer consideration of summary judgment to permit further discovery if the nonmovant needs to discover essential facts. *Garrett v. City & Cnty. of San Francisco*, 818 F.2d 1515, 1518 (9th Cir. 1987). Specifically, Rule 56(d) states that when a party opposing summary judgment cannot present "facts essential to justify its opposition," it can submit an affidavit or declaration explaining its reasons. Fed. R. Civ. P. 56(d). In response, the court may defer or deny consideration of the motion, allow further discovery, or issue any other order. *Id.* A nonmovant can avoid summary judgment under Rule 56(d) by showing that "1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; 2) the facts sought exist; and 3) the sought-after facts are essential to oppose summary judgment." *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 678 (9th Cir. 2018). Failure to conduct discovery diligently is grounds for denial of a Rule 56(d) motion. *Pfingston*, 284 F.3d at 1005.

Mr. Smith is entitled to relief under Rule 56(d) because: a) this Court can construe Mr. Smith's statements in opposition to summary judgment as an implicit Rule 56(d) request; b) Mr. Smith's implicit Rule 56(d) request was meritorious even without a formal showing of sought-after facts; and c) Mr. Smith was sufficiently diligent during discovery, especially considering his status as a pro se prisoner.

**A.    This Court Has the Authority to Construe Mr. Smith's Response to Appellants' Motion for Summary Judgment as an Implicit Rule 56(d) Request.**

Although Mr. Smith did not explicitly invoke Rule 56(d) with an affidavit, this Court can construe his statements in response to summary judgment as an implicit Rule 56(d) request. In his response, Mr. Smith explained that there was much pertinent evidence remaining to be discovered. 2-ER-026. Mr. Smith stated that he had made discovery requests for "the reason for the bed moves," records of "[t]he actual bed moves," "[i]nmates['] positive COVID test[s]," "[t]he warden[']s notes [] on this subject," "[t]he caseworker[']s notes on this subject," and "[m]edical staff's policy and records," but that "[D]efendants objected to most of [his] requests for evidence" citing "safety and security reasons." *Id.* Indeed, Mr. Smith received only his own medical records and Appellants' COVID-related press releases. Mr. Smith argued that, accordingly, "[t]here is plenty of evidence" supporting his allegation that "can be produce[d] later at trial." *Id.*

Mr. Smith's statements describing his thwarted discovery efforts can be construed as an implicit Rule 56(d) request. Courts are instructed to apply liberal construction of pleadings and looser summary judgment rules for pro se prisoners. *Thomas*, 611 F.3d at 1150. Accordingly, this Court has repeatedly recognized pro se prisoners' assertions regarding incomplete discovery in opposition to summary judgment—like Mr. Smith's—as Rule 56(d) requests. *See Weldeyohannes v.*

50

*Washington*, 162 F.4th 972, 978 n.5 (9th Cir. 2025) (construing pro se prisoner's request for video recording of challenged conduct in his response to summary judgment as Rule 56(d) request); *Calloway v. Veal*, 571 F. App'x 626, 627-28 (9th Cir. 2014) (recognizing a pro se prisoner's identification of issues he could not investigate in opposition to summary judgment as a Rule 56(d) request, given "the allowances that must be made for pro se prisoners").

### B. Mr. Smith's Rule 56(d) Request Was Meritorious Even in the Absence of a Formal Showing.

Mr. Smith's implicit Rule 56(d) request to defer summary judgment for further discovery was meritorious because he sought clearly relevant discovery. *See Jacobson v. U.S. Dep't of Homeland Sec.,* 882 F.3d 878, 883-84 (9th Cir. 2018) (reversing denial of Rule 56(d) request where the plaintiff sought discovery that "may be relevant to the ultimate constitutional question"); *Jones*, 393 F.3d at 930 ("[S]ummary judgment in the face of requests for additional discovery is appropriate only where such discovery would be 'fruitless' with respect to the proof of a viable claim." (quoting *Klingele v. Eikenberry*, 849 F.2d 409, 412 (9th Cir. 1988)). Mr. Smith sought discovery related to WSCC's bed move and COVID infections— evidence core to his allegation that Appellants moved prisoners infected with COVID into his unit. 2-ER-026; 3-ER-300. Mr. Smith's case thus also stands in contrast to cases where this Court denied Rule 56(d) relief due to duplicative or

51

unnecessary discovery requests. *See Twentieth Century Fox Television v. Empire Distrib., Inc.*, 875 F.3d 1192, 1199-1200 (9th Cir. 2017) (affirming denial of Rule 56(d) motion where further discovery was not "germane or relevant" to constitutional issues at hand); *Bank of Am., NA v. Santa Barbara Homeowners Ass'n*, No. 19-16922, 2022 WL 17076048, at *1 (9th Cir. Nov. 18, 2022) (rejecting assertion that further discovery was needed to determine [a fact] where "the record clearly establishe[d] [it]").

The absence of a formal Rule 56(d) filing was not dispositive to Mr. Smith's Rule 56(d) request. A formal Rule 56(d) motion identifies the specific facts sought in further discovery, demonstrates that the facts exist, and explains why they are essential to oppose summary judgment. *Stevens*, 899 F.3d at 678. These elements, however, are not strictly necessary, as demonstrated by this Court's decision in *Sawyer v. MacDonald*.[15] The *Sawyer* court held that the district court abused its

---

[15] That a formal Rule 56(d) showing is not a prerequisite to relief is reinforced by the fact that courts have applied Rule 56(d) sua sponte, in prisoner and other pro se cases, when they identify the need for further discovery. *See Square El v. O'Leary*, No. 87 C 0495, 1988 WL 10630, at *2 (N.D. Ill. Feb. 5, 1988) (applying Rule 56(d) sua sponte to deny summary judgment where plaintiff, "[a]s an incarcerated individual," had "limited ability to conduct the investigation and produce the documents necessary to properly respond to the summary judgment motion"); *HSBC Bank, USA, N.A. v. Davis,* No. 12–cv–06801, 2014 WL 12775667, at *3 (N.D. Ill. July 7, 2014) (deferring summary judgment sua sponte under Rule 56(d) because while pro se plaintiff "might not be able to develop enough evidence to prevent

discretion in denying a pro se prisoner's Rule 56(d) motion, even though he did not make a formal showing of the facts he sought. *Sawyer v. MacDonald*, 768 F. App'x 669, 671 (9th Cir. 2019). The *Sawyer* plaintiff made his Rule 56(d) motion by writing: "Because it is difficult for plaintiff, a prisoner, to obtain access to information from prison officials he is entitled to special consideration; at the very least a stay until he obtains information on other defendants and necessary discovery." *Id.* Here, Mr. Smith went further than the *Sawyer* plaintiff, explaining the information he sought during discovery and how his discovery efforts were rebuffed. 2-ER-026. This Court should hold—like it did for the *Sawyer* plaintiff— that Mr. Smith sufficiently explained his inability to obtain important evidence even without a formal showing of the facts he sought.

Additionally, Appellants' unreasonable behavior during discovery weighs in favor of granting Mr. Smith's implicit Rule 56(d) request. In *Calloway*, this Court vacated summary judgment under Rule 56(d)—without a formal Rule 56(d) showing—where the defendants refused to respond to the pro se prisoner-plaintiff's relevant discovery requests. *Calloway*, 571 F. App'x at 627-28. Remanding the case, this Court instructed the defendants "to refrain from engaging in obstruction of [the

---

summary judgment against her," "she should be permitted a reasonable opportunity to try").

pro se prisoner's] reasonable discovery requests, particularly in light of the obvious disadvantages he faces in prosecuting this case." *Id.* at 628.

Here, Appellants similarly evaded discovery. Reasoning that "defendants in prison civil rights cases often hold a disproportionate share of the relevant information," the magistrate judge ordered broad disclosures, in redacted form if necessary for security or privilege purposes. 1-SER-4. Appellants, however, violated this order. *See* 2-ER-026. Despite the lower court's directions and Mr. Smith's targeted discovery requests, Appellants produced only COVID-related press releases and Mr. Smith's own medical records. Their obstructive conduct must weigh in favor of Mr. Smith's Rule 56(d) request—Appellants should not be rewarded with summary judgment.

### C. Mr. Smith Acted Diligently in Conducting Discovery.

Mr. Smith made targeted discovery requests and moved to extend discovery deadlines when he needed more time; his attempts to obtain discovery were, however, thwarted by Appellants. 2-ER-026; 1-SER-10. His efforts meet the Ninth Circuit's threshold for diligence. *See Jones*, 393 F.3d at 930 (observing that plaintiff acted diligently in pursuing discovery where he made discovery requests within allotted time, made some requests after it expired, and moved court to extend discovery deadlines). Faced with Appellants' stonewalling, Mr. Smith acted reasonably by proceeding with evidence that both the magistrate and district court

judge found sufficient to defeat summary judgment. 1-ER-002-03, 010-011. Furthermore, Mr. Smith's careful engagement with discovery is readily distinguishable from cases where courts found lack of diligence. *See Pfingston*, 284 F.3d at 1005 (affirming denial of [now Rule 56(d)] request where plaintiff waited nearly three years to conduct any discovery); *Lucien v. Gonzalez-Gamez*, No. 23-cv-03670, 2025 WL 2402673, at *3 (N.D. Cal. Aug. 19, 2025) (denying Rule 56(d) request where plaintiff failed to describe any effort to secure information from defendants through discovery process), *appeal docketed*, No. 25-6086 (9th Cir. Sept. 26, 2025); *Gates v. Sergent*, No. 2:22-cv-1576, 2024 WL 5294941, at *2 (E.D. Cal. Nov. 21, 2024) (denying Rule 56(d) request where plaintiff did not conduct any discovery during time allotted by court).

Additionally, while incarcerated litigants are not exempt from the Rule 56(d) diligence requirement, *see McRae v. United States*, 812 F. App'x 505 (9th Cir. 2020), this Court has recognized that indicia of diligence may be different for a pro se, incarcerated litigant like Mr. Smith, as compared to a counseled, free-world litigant. In *Jones v. Blanas*, this Court found diligence for the purpose of Rule 56(d) even though the incarcerated plaintiff failed to meet discovery deadlines, reasoning that he was "simply unable to comply" "due to the lack of counsel and the limitations in information and resources associated with [the plaintiff's] confinement[.]" *Jones*, 393 F.3d at 930. Scholars have also addressed the discovery obstacles facing

55

incarcerated litigants bringing civil rights claims. Information asymmetries leave prison officials in control of nearly all evidence and incarcerated plaintiffs without knowledge of "what information exists or where it is housed." James Stone, *The Prison Discovery Crisis*, 134 Yale L.J. 2751, 2782 (2025). Incarcerated plaintiffs also lack practical knowledge about how to litigate, including how to handle the discovery process. *Id.* at 2780. Accordingly, this Court should not apply rigid metrics to determine diligence; instead, it should find diligence where a litigant has made reasonable, good-faith efforts in light of the constraints he faces—just as Mr. Smith did here.

### D. Applying Rule 56(d), This Court Should Remand with Instructions to Reopen Discovery If It Finds Mr. Smith Provided Insufficient Evidence.

Because Mr. Smith's implicit Rule 56(d) request was meritorious, this Court should at least remand with instructions to reopen discovery.[16] *See Jones*, 393 F.3d at 930. At the very least, this Court should remand for the lower court to consider

---

[16] This Court could even affirm the denial of summary judgment in the absence of a genuine issue of material fact, given the thin record. *See Aperia Sols., Inc. v. Evance, Inc.*, No. 3:18-cv-03276, 2020 WL 6946514, at *5-6 (N.D. Tex. Nov. 25, 2020) (observing that, even absent genuine factual dispute, "the better course [than granting summary judgment would be] to proceed to trial" where record was undeveloped) (citing *Black v. J.I. Case Co., Inc.*, 22 F.3d 568, 572 (5th Cir. 1994)); Fed. R. Civ. P. 56(d)(3) (courts may deny summary judgment if nonmovant cannot present necessary evidence).

Rule 56(d) in the first instance. To reverse the decision below and grant summary judgment without allowing the trial court to consider Rule 56(d) would strip the trial court of its discretion in such matters. *See Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 920-21 (9th Cir. 1996).

## CONCLUSION

For the foregoing reasons, this Court should dismiss this appeal for lack of jurisdiction. If the Court were to conclude that it has jurisdiction, it should affirm the district court's denial of qualified immunity or, in the alternative, remand with instructions to reopen discovery under Rule 56(d).

Dated:     April 23, 2026                    Respectfully submitted,

*/s/ Aaron Littman*
 Aaron Littman
 UCLA SCHOOL OF LAW
 PRISONERS' RIGHTS CLINIC
 385 Charles E. Young Drive E
 Los Angeles, CA 90095
 (310) 825-9562

 *Attorney for Appellee*
 *Jacob Smith*

57

## STATEMENT OF RELATED CASES

The undersigned is aware of one related case currently pending in this Court.

1.      *Hintze v. Daniels*, No. 24-6806 (9th Cir. Nov. 08, 2024) (appealing *Hintze v. Sisolak*, No. 3:22-cv-00436 (D. Nev. Oct. 8, 2024)). *Hintze* presents several issues overlapping with the instant case. Both cases involve Eighth Amendment claims for involuntary COVID exposure in Nevada prisons. The *Hintze* appellants similarly argue that the district court impermissibly relied on inadmissible evidence to find a genuine dispute of material fact. The *Hintze* appellee argues, as Mr. Smith does here, that (1) this Court lacks jurisdiction to review that argument and (2) appellants waived that argument by failing to raise it until appeal. This Court heard oral arguments, and the case was submitted, on March 9, 2026.

*/s/ Aaron Littman*
Aaron Littman

*Attorney for Appellee*
*Jacob Smith*

58

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Circuit Rule 32-1(a) because it contains 13,183 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6).

*/s/ Aaron Littman*
Aaron Littman

*Attorney for Appellee*
*Jacob Smith*

## CERTIFICATE OF SERVICE

I certify that on April 23, 2026, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will thereby receive service.

/s/ Aaron Littman
Aaron Littman

*Attorney for Appellee*
*Jacob Smith*

60